THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW YORK

RAY J. FRENCH, an individual

        Plaintiff,

    v.

Lear Capital, Inc. a California Corporation;
TERRY MOLONEY, an Individual

        Defendant.

Case No.:  8:21-CV-0488 (DNH/DJS)

COMPLAINT AND
JURY DEMAND

Plaintiff, Ray J. French ("Plaintiff"), by and through his undersigned attorney of record,
alleges claims against Defendant Lear Capital, Inc. and Terry Moloney as follows:

## PARTIES

1.   Plaintiff Ray J. French is an individual residing in 299 Gravel Road, Gouverneur,
NY 13642 and is 75 years old and retired with hearing loss which causes him to be unable to
understand words and sounds, especially over the telephone.

2.   Defendant Lear Capital, Inc. (Lear) is a California corporation with its principal
place of business at 1990 South Bundy Drive, Suite 650, Los Angeles, CA 90025.  Lear Capital, Inc.
is a Los Angeles based precious metals dealer that sells precious metals to customers nationwide,
including in the State of New York.

3.   Defendant Terry Moloney  is an individual who upon information and
belief resides in California.  Moloney is a senior accountant executive for Lear Capital, Inc. and
provided investment advice to Plaintiff without being a licensed securities agent or financial advisor.

4.   Defendant Moloney is referred to as an individual Defendant.

5.   The capacity of Defendant Moloney is asserted upon information and belief.  The

Defendants all worked together in conjunction to violate the various legal rights as set forth in this Complaint.

## JURISDICTION AND VENUE

6.   This Claims asserted herein are governed by New York State Common Law and Statutes relative to fraud and misrepresentations of seniors as found in General Business Law 349©, And the Federal Elder Justice Act and Citation Civil Elder Abuse NY CLS Soc Serv § 473 (2017) 28 U.S.C. 1332(A)(1), where Defendants reside in two different states and the amount in this Court has jurisdiction over the Defendants named herein under 28U.S.C.S section 13323(A)(I) as a dispute between citizens of different states and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.

7.  Venue is also proper in New York State Supreme Court under its long arm jurisdiction as the advertising, misrepresentations, were all submitted to the Plaintiff in New York and Ray French was enticed by telephone conversations which were misrepresentations of the fact or difficult or impossible to hear and for which the Defendant never followed up with the writings as promised. Any documents that were signed were signed in New York. The transactions could not have been concluded without the Plaintiff who resides in New York having allegedly agreed to conduct business with the Defendants and for which documentation were requested and copies never provided.

## GENERAL ALLEGATIONS

A. LEARS DECEPTIVE PRACTICES

8. Lear uses various brochures that they send to customers to entice the customer to invest in silver, gold or platinum.

On January 31, 2020 Ray purchased 1.5 ounce coins called Silver Falcons. The cost was $43.25 per coin for a total of 120 coins. During this conversation, Plaintiff also mentioned that he

had over 5800 ounces of silver coins from GoldCo, in a silver IRA being held at Strata Trust. Mr. Moloney quickly said, "they are poor coins and most people fail to get more than a 50% return". "GoldCo is a poor investment". Mr. Moloney convinced Plaintiff that he was in need of the Lear Capital IRA Account Rehabilitation". Plaintiff was then sent a letter and asked to fill out the attached form for Strata Trust "Account Representative Designation Request". Plaintiff completed the form and submitted it prior to February 4, 2020. Plaintiff received a letter on February 11, 2020, dated February 4th indicating that Lear Capital was now the new account representative. "Based on what is transferred into Strata Trust, Lear Capital will make a specific recommendation. Nothing happens without your consent".

Plaintiff was told the following:

(1) The account representative designation allows Lear to see exactly what is in Plaintiff's account;

(2) The Strata account will allow Lear to see what was paid for investments;

(3) With the account representative designation, it will allow Lear to see the exact type of coins;

(4) Lear will calculate the current value;

(5) Nothing will happen without Plaintiff's consent, knowledge and recorded confirmation;

(6) Lear will review the account and make recommendations if Lear feels they can help the client into a better position; There is no cost to you;

(7) Lear sent a Fedex prepaid return envelope to claimant to sign the designation statement.

The foregoing comments were made by telephone and was allegedly taped with another person running the recording machine. At that time Moloney offered to purchase the silver for $105,000.00 (5818 proof silver coins) and offered the platinum as the best potential for Plaintiff to recover his funds. Claimant insisted that he needed to see these comments and quotes on paper at

which time a second male voice interrupted and said "don't worry we will send all the paperwork to you". There was a barrage of information that was thrown at the Plaintiff and including that he needed to act quickly in spite of the fact that he did not understand what he was getting and was under the impression that all of the transactions would be in writing and would be forwarded to Plaintiff before execution.

9. One of their propaganda methods is a book entitled "The Ultimate Guide To Gold Investing And Eight Reasons to Buy Gold Now".

Some of their representations include:

A. Precious metals are tangible and rare. As finite resources they have inherent value and are trusted by banks and billionaires as a store of wealth.
Then proceed to give there 8 reasons including 1) rising debts claiming "hard assets like gold and precious metals will shield your retirement with a tangible investment worth more than verbal promises".

B. For years China has waged a currency war on the United States. If China is successful this would significantly reduce the dollar's dominance potentially leading to waives of inflation.

C. The Buffett indicator peaked around 145% before the dot dash. com bubble today it is at 148.5 and "is a powerful metric that Warren Buffett once called "probably the best single measure of where valuations stand at any given moment". "When markets sell off then gold tends to go up".

D. Last time interest rates were this low and then started to rise was in the late 70's. By 1980, inflation skyrocketed, so did rates and gold rose to record highs. Historically rising rates are good for gold.

E. If Allen Greenspan is correct in his assessment then the US economy is in the early stages of a 1970's style stagflation, gold and silver could soar to yet another new high as it did back then.

F. A global movement to gold taking place. Russia has recently surpassed China as the fifth largest owner of gold reserves. A global movement to gold is taking place. The move is massive and central banks around the world know the importance of diversifying into this physical asset.

G. FDIC or SIPC Insurance to save you in the event of a market catastrophe? Unlikely since these institutions are grossly underfunded. Gold is globally accepted and recognized. Its universal appeal allows it to independently operate from institutions and governments while acting as its own currency.

H. Long term precious metals continue to outperform. Gold outperforms the market since 1970 and if you had diversified $100,000.00 portfolio in 2000 with 20% in gold you would have $290,190.00 a 61% higher return than the Dow with just a little precious metal allocation.

I. Further representations are that Lear is one of the highest rated precious metal investment dealers and after you select your metals, Lear Capital securely ships them and ships to an IRS approved custodian.

J. Lear Capital also submits pamphlets entitled in "The Silver to Gold Ratio" and

K. "Five Real Threats That Could Wreck Your Retirement" and "Sky High Silver Is This The Year The Prices Will Soar". Lear tells potential customers that purchasing metals will shield their retirement money "from the volatility associated with stocks and other paper assets".

L. Lear promises customers "complete purchase transparency" including "no hidden fees and a clear and fully disclosed gold and silver acquisition process".

10. Contrary to the representations that there will be no hidden fees, Lear earned profits by charging a fee commonly referred to as the "spread" which refers to the difference between the dealers wholesale cost and the retail price offered to customers.   Lear through the individual Defendant misleads customers about the amount of the fee concealing that it charges as high as 33% which is typically hidden in the spread.   The fees are charged, simply to process a transaction with Lear retaining the significant profits to the detriment of Ray French, the Plaintiff.

11. Defendants conduct all preliminary communications by phone not allowing customers to review any documents in writing until after the fees have been received.  Plaintiff had no written documentation of quantity, type, or cost of the precious metals and no information on the true cost of Lear's fees.  All of which resulted in Plaintiff investing his entire retirement of $290,169.46 with an asset balance of $75,448.07 at the end of December 31, 2020 and Lear orchestrating the transfer of silver to platinum and again Lear taking further fees and commissions.

## DEFENDANTS MISREPRESENTATIONS TO PLAINTIFF
## ABOUT GOLD AND SILVER INVESTMENTS IN 2019 AND 2020

12.  Plaintiff spoke with Lear representative Terry Maloney during February of 2020 about Lear's investment opportunities.

13. Upon information and belief Defendants are not licensed investors with any regulatory agency.

14. Lear through the individual Defendant encouraged Plaintiff to liquidate his existing investments and transfer his entire 401K retirement funds to invest in the Lear IRA.

15. In order to accomplish this,  Lear Capital had to join with Strata Trust Company, a Self-Directed IRA.

16.   There was no due diligence as to the Plaintiff's sophistication and/or knowledge of financial markets by either Lear or Strata Trust Company and Lear and Maloney orchestrated the liquidation of the Plaintiff's entire retirement in order to purchase precious metals which started out with the silver purchase.

17.   The Strata Trust Company gives the impression that it is a Traditional IRA account and does not distinguish for the Plaintiff the difference between a Traditional IRA and a Self-Directed IRA.

18.   Defendants assured Plaintiff that investing in the Lear IRA was a safe investment and that the Defendants advised Plaintiff that this investment was actually safer than keeping his money in banks because it would protect him from volatile markets and bank failures and would be safer than the stock market.

19.   Plaintiff requested information explaining the fees and instead Defendants failed and refused to provide such documentation and relied instead upon telephone communications with the Plaintiff in spite of the fact that Plaintiff stated that he could hardly make out or hear or understand the communication between Defendants and Plaintiff. Alleged recordings of the conversations were never provided after demands for same.

20.   Plaintiff never received a breakdown of all the costs and fees nor how they are calculated and instead Defendants continued to communicate grandiose plans for significant gains in Plaintiff's retirement funds by purchasing gold, platinum or such other precious metals that will outperform the stock market and in fact are safer than either the stock market or banks.

21.   After asset transfers on February 21, 2019 of $150,234.00 and a second wire transfer on March 4, 2019 of $140,206.85 the Goldco quarterly statement reported the value as $290,169.46.

22.   On May 30, 2019 Plaintiff received emails from Goldco explaining that the loss

shown on the statement down to $91,345.95 was only a paper loss for taxes and the actual value was

$279,750.

23.  Several phone calls with Strata Trust and Lear Capital throughout January of 2020

and the Plaintiff received a document documenting the change in representatives on February 4,

2020 from Goldco to Lear Capital.  On February 6, 2020 in a phone call with Lear that lasted

approximately 40 minutes Plaintiff requested to rescind the order and was advised that he was being

tape recorded.

24.  On February 6, 2020 Plaintiff received a letter that was a confirmation from Terry

Maloney that silver coins were purchased for $105,305.80 and also on February 6, 2020 confirmation

from Terry Maloney that $105,343.80 was purchased in platinum.

25.  Plaintiff received a quarterly statement showing a total value of $75,448.07 as of

December 31,2020.

26.  The document entitled Account Representative Designation Request naming Lear

Capital, Inc. was dated February 1, 2020, however, Plaintiff's copy sets forth February 4th which was

actually received on February 11, 2020.  The transaction on the document states that it was

completed on February 6, 2020 so Plaintiff never saw the paperwork and documentation prior to the

transaction having been completed.

27.  In reliance solely on investment advice from Defendants, Plaintiff liquidated his

entire retirement portfolio.

28.  Defendants asked Plaintiff a series of questions to which he was only permitted to

respond yes or no.  During this phone call Plaintiff was unable to hear and make out the statements

clearly, was told that he would receive an actual recording/transcript of the conversation.  Plaintiff

never understood the terms of the agreement using Lear Capital and its Self-Directed IRA Strata

Trust Company.  This phone call did not give Plaintiff the price of the platinum and Defendant stated

that the verification and confirmation would be sent to Plaintiff in writing. Allegedly a tape recording was running when Plaintiff said that he was unable to hear the prices of what the Plaintiff was going to be paying and relied upon the statements that the transaction would be submitted in writing to Plaintiff before it was completed. On February 6, 2020 the "spot price" of platinum was $970.00 per ounce and it was never made clear to Plaintiff what Plaintiff would be paying for the platinum and Defendant's discussion about cost versus price was totally confusing to the Plaintiff. Defendant's never explained clearly what the cost to Plaintiff would be and what the actual price of the commodity was or would be at the time of consummation of the transaction.

29. Following conversations with Defendants, Plaintiff received an email asking him to sign a "Shipping Agreement". This email contained a document which Plaintiff signed electronically but never had an opportunity to review the document, have an attorney review it, have his wife review it or anyone else to ensure that whatever it was being signed was consistent with representations by the Defendants which are now known to be exaggerated and false. Plaintiff never saw nor was he ever provided with that agreement.

Based on the statements from Strata Trust gold and silver purchased from the GoldCo in 2019 where the actual coins were held in their repository and there was no follow up advice as to the values on the statement which showed as of April 4, 2019, $290,169.46 and by June 30, 2019 were at a value of $91,345.95. After Plaintiff made an inquiry, Jim Assalley sent an email on May 30, 2019 and said "custodians only report melt value as your market value. This can be confusing but ultimately has a huge tax benefit". He went on to give the following example: suppose you have 5,000 ounces of Silver American Eagles proofs and this has a melt value of $73,600.00, the actual current asset value was $55.95 per ounce or $279,750.00,all of which made no sense to the Plaintiff.

Making the transaction even more confusing that Plaintiff, Defendant made a statement if that proof American Silver Eagle is not the same coin as the Canadian silver lucky dragons. These

emails were from Jim Asselley, Rick Dougherty and Johnny Cuda and sent May 30, 2019at 1:19 p.m.

and a second at 1:26 p.m.  The foregoing sets forth how the Defendants totally confused the Plaintiff

with their comments and representations that did not tie into any values that one could research and

determine what was actually held and its actual value  at the time.

30.  After the platinum account was established with Lear Capital as the representative,

Defendant Moloney reached out to Plaintiff seeking to upsell the Plaintiff.  Moloney tried to

persuade Plaintiff to convert his silver coins into platinum.

31.  Moloney informed Plaintiff that his Lear IRA was in bad shape and that his account

was down nearly 50%.

32.  Moloney then promised Plaintiff that platinum would be an even more secure

investment and that platinum was forecast to surpass the assets of silver by the end of the year.

Defendants indicated to the Plaintiff from what he could hear that this was the only way to recoup

losses in his account by switching to platinum.

33.  Based upon Defendants representations and advice, Plaintiff agreed to transfer his

account into platinum.

34.  Again there was no representation about additional fees that would be charged to

the Plaintiff.

35.  Any agreements that the Plaintiff signed at the Defendants request are not

enforceable as they were based upon fraudulent representation and not shown to  the Defendants.

36.  The Defendants misrepresented the value of precious metals, misrepresented the

stability of gold and precious metals, misrepresented the fees  all of which were garbled in oral

communication and were not provided in any written documentation. Plaintiff never received any

statements that demonstrated the cost of the precious metals, the fees and/or "spread" related to the

purchases and withheld any information relative to the out of pocket expenses to be charged to the

Plaintiff's account resulting in a windfall to the Defendant and significant losses of the Plaintiff's entire retirement account.

37. Assuming that there is such a document as a Shipping and Transaction or Storage Agreement, Plaintiff never saw it, never reviewed it, never had it explained and was enticed to sign it through Docu Sign with no understanding or explanation of the terms and/or conditions of the alleged agreement.

38. When Plaintiff asked for a copy of the recording that was alleged to have been made, representatives of Defendants claim there is no such recording.

39. The misrepresentations regarding fees and charges and the grandiose statements of safe and growth investments that will out distance the stock market were among those as alleged above upon which the Plaintiff relied.

40. Defendants were well aware that the Plaintiff would rely upon their statements and as a result of this reliance the Plaintiff was enticed to make investments which resulted in $290,000.00 in retirement funds that was quickly reduced to $75,000.00.

On the 13th day of February, 2020 Plaintiff having been so confused, misrepresented and misled, signed a Power of Attorney for Plaintiff's wife Lauren and son Lee to act on his behalf because Plaintiff was no longer confident that he was making appropriate decisions especially in view of the way and manner that Defendant "conned" the Plaintiff into making purchases and sales of silver and platinum and other such commodities. In attempting to review the statements it appears that Defendant Moloney purchased 5818 silver Canadian Dragon High Relief coins for silver value of $18.10 each for a total price of $105,305.80 and Moloney paid a "spot price" and not a "coin price" of $50.64 as a result, there was a loss of $189,317.72. Thereafter, Defendant Moloney then sold Plaintiff 70 platinum bars, not at the spot price of $970.00 per ounce but at a price of $1,497.54 which resulted in a second loss of $36,927.80 and thus losing a value of $226,245.52 in one day.

Then Plaintiff made a call at 8:12 a.m. on February 7, 2020 and left a message to stop the transaction. Defendants never bothered to do any due diligence with regard to Plaintiff purchasing commodities such as silver, gold and platinum and therefore did not inquire as they should have that the Plaintiff was on various medicines for high blood pressure, cholesterol, and depression. "Plaintiff was literally a lamb going to slaughter".

41. As a result of Defendants deceptive and predatory practices Plaintiff has suffered significant financial, emotional and physical hardship.

42. Plaintiff being 75 years of age is not going back to work to recover what was lost in the investments with the Defendants. Had the Plaintiff known the true cost of investing with Defendants he never would have liquidated his retirement/401K and never would have invested with the Defendant Lear Capital .

### FIRST CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY

43. Plaintiff realleges and incorporates by reference the preceding paragraphs 1 through 41 of this Complaint as if more fully set forth herein at length.

44. As a consequence of among other things the nature of the advice Defendants provide and their holding out as investment advisors Defendants owed fiduciary duties to Plaintiff.

45. As fiduciaries Defendant had a fundamental obligation to act in the best interests of their clients and to provide accurate investment advice as it relates to commodities such as precious metals including representations and statements to avoid misleading the client and to provide full and fair disclosure of all material facts including costs and fees and methodology for purchase and liquidation of account.

46. Defendants breached their fiduciary duties owed to Plaintiff by among other things:

(a) Misrepresenting the cost of the precious metals they were selling to Plaintiff.

(b) Misrepresenting the nature of the precious metals they were selling to Plaintiff.

(c) Misrepresenting that Defendants would not charge Plaintiff any fees for his transactions.

(d) Failed to describe and disclose the fees/commissions/other described payments that Defendants received out of the Plaintiff's precious metals purchases.

(e) Misrepresenting that the investments are consistent with a Traditional IRA.

(f) Misrepresenting the benefits of investments with Defendants.

(g) Failing to warn Plaintiff of the risks associated with investment in precious metals with Lear IRA.

(h) Failing to obtain any due diligence information with regard to the Plaintiff's age, sophistication, net worth, and determine whether commodities such as precious metals was an appropriate investment for the Plaintiff's entire 401K/retirement funds.

(i) Failing to disclose that Defendants are not regulated nor licensed by any regulatory authority.

(j) Intentionally and knowingly concealing from Plaintiff critical facts that should have been disclosed regarding the purchase price of precious metals, the selling price of precious metals, the spread and/or fees and/or commissions to be withdrawn directly to the Defendant.

(k) Otherwise acting in a manner inconsistent with and adverse to the interests of the Plaintiff.

47. As a result of Defendants breaches of their fiduciary duties as alleged herein, Plaintiff has suffered injury, damage, loss and harm in an amount in the sum of $240,000.00.

48. As a result of the breaches of Defendants' fiduciary duties as alleged herein,

Plaintiff has been required to retain counsel to prosecute this suit and therefore Plaintiff should recover from the Defendants its losses, attorney's fees, costs and other expenses related to the transactions described in this Complaint.

## SECOND CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION

49.  Plaintiff realleges and incorporates by reference the preceding paragraphs 1 through 46 of this Complaint as if more fully set forth herein at length.

50.  Defendants made numerous representations in connection with the offering of precious metals to Plaintiff as alleged in detail in the above referenced facts.

51.  Defendants representations concerning material facts were false and Defendants knew that their representations were false when made and Defendants knew that the Plaintiff would rely upon the representations as to among other things gold and precious metals are safe, gold and precious metals will outperform the market, gold and precious metals will outperform the banks and out distance the FDIC and SPIC and China and Russia are loading up on gold and alleged statements by Allen Greenspan that gold and silver could soar and that any rising interest rates are good for gold and the Buffett indicator another reason to buy gold and precious metals and as more specifically set forth in the statement of facts above.

52.  Defendants misrepresentations were made recklessly, knowing that they had insufficient knowledge upon which to base such representations and that such representations were false.

53.  Defendants false representations were made in order to induce Plaintiff to purchase precious metals and invest with the Lear IRA Capital Group, the Defendants herein.

54.  Plaintiff reasonably relied upon Defendants false representations and was unaware of their falsity.

55.  In reliance on Defendants false representations Plaintiff liquidated his entire 401K account and purchased silver and thereafter enticed to purchase platinum all to Plaintiff's detriment.

56.  As a direct approximate result of Defendant's false representations Plaintiff has been damaged in the sum of $240,000.00 plus reasonable attorney's fees, interest and costs.

57.  Defendants fraud constitutes willful and malicious conduct with a manifest disregard and a knowing and reckless indifference for the rights of Plaintiff an elderly, hard of hearing individual who had no sophistication or history investing in commodities and/or precious metals and therefore is entitled to punitive damages.

## THIRD CAUSE OF ACTION
## FRAUDULENT INDUCEMENT

58.  Plaintiff realleges and incorporates by reference the preceding paragraphs 1 through 55 of this Complaint as if more fully set forth herein at length.

59.  Defendants made false and misleading statements to Plaintiff and omitted material facts as alleged herein with the specific intent to fraudulently induce Plaintiff to liquidate his 401K savings in its entirety and to purchase precious metals and to enter into the alleged Shipping and Transaction Agreement, which Plaintiff has never seen nor was ever provided a copy and ignoring those requests.

60.  Plaintiff demanded a copy of any agreements that were signed by Docusign as he had difficulty hearing the terms and conditions for the purchase of precious metals and was never provided a transcript of the recording of the communications that was allegedly made in order to entice Plaintiff into purchasing gold and precious metals all to Plaintiff's detriment.  Upon inquiry Defendants advised that they had no such recording.  During the process Defendants just directed Plaintiff to sign documents by Docusign without explanation, without any representation as to the

substantial risk and the substantial and significant charges that were made against the Plaintiff's account for the sole benefit of the Defendant.

61. Defendants knew that such statements and omissions were false and misleading and involved material facts about the product and the purported document that the Plaintiff was directed to execute.

62. Defendants made the statements and omissions with the intent that Plaintiff would rely on such false and misleading statements and omissions and agree to purchase precious metals and enter into a financial advisor arrangement with the Defendants.

63. After making the misrepresentations and omissions orally and allegedly in writing, Defendants sent Plaintiff an email asking him to sign a "Shipping Agreement" that would not allegedly alter any of the terms Defendants had discussed with Plaintiff. This email contained a link to the documents which Plaintiff then signed electronically. Plaintiff was not provided with a copy of the document.

64. Defendants told Plaintiff this was merely a shipping agreement and not a purchase contract.

65. Plaintiff understood that the document had no effect on his prior discussions with Defendants given that the Shipping and Transaction Agreement did not define the cost of the precious metals rather the cost of precious metals have been defined allegedly in prior phone and email conversations with Defendant.

66. Plaintiff purchased silver and platinum, executed the document Defendants provided to be signed by DocuSign relying on the false, misleading and negligent statements and omissions alleged herein.

67. Defendants actively concealed the true facts concerning the transaction from Plaintiff.

68.  As a direct and proximate result of Plaintiff's reliance on Defendants promises and representations, Plaintiff liquidated his 401K account, purchased precious metals from Defendants and executed the document forwarded to him to be signed with the "DocuSign" process.

69.  Based on Defendants fraudulent inducement Plaintiff is entitled to rescind the Shipping and Transaction Agreement or whatever agreement was entered into with DocuSign and to unwind his transactions with Defendants and hereby demands that the parties by placed in the position to be held to with respect to each other immediately prior to any purchase of precious metals by and through Defendants with Defendants as financial representative.

**FOURTH CAUSE OF ACTION**
**COMMON LAW FRAUD**

70.  Plaintiff realleges and incorporates by reference the preceding paragraphs 1 through 67 of this Complaint as if more fully set forth herein at length.

71.  As outlined above Defendants made representations of fact in connections with the offerings of precious metals.

72.  These representations were false and Defendant knew that these representations were false when made.

73.  The false representations were made in order to induce Plaintiff to purchase Precious metals and to use the Defendant as his agent and financial advisor.

74.  Plaintiff reasonably relied on Defendants false representations and was unaware of their falsity.

75.  In reliance on Defendants false representations Plaintiff liquidated his retirement account and purchased precious metals and invested with Lear Capital IRA all to Plaintiff's detriment.

76.  Plaintiff only discovered the true facts concerning these transactions when he

retained counsel and began having his counsel investigate the facts relating to his investment.  Prior to that time, Defendants actively concealed the true facts from Plaintiff.

77.  As a direct and proximate result of Defendants false representations Plaintiff has been damaged in the amount of $240,000.00.

78.  Defendants fraud constitutes willful and malicious conduct with a manifest disregard of and a knowing and reckless indifference for the rights of the Plaintiff and as such Plaintiff is entitled to punitive damages in an amount to be proven at trial but in no event less than the amounts of his principal investments.

## PLAINTIFF OBJECTS TO ANY REQUEST FOR ARBITRATION IN CALIFORNIA

79.  Upon investigation into other cases with Defendants it appears that their practice is to attempt to produce an agreement that somewhere in it there is a provision for arbitration in California.

80.  Plaintiff objects to any attempts by Defendants to assert that arbitration clause is an agreement by the parties as the was, "no meeting of the minds" in order to remove the case from Federal Court in New York.

81.  Plaintiff further asserts that if there is any provision in any document that Plaintiff was not provided and any document that was forwarded without explanation to be executed by DocuSign, now asserts that there was no meeting of the mind, that there was no contractual agreement under basic contract law wherein the Plaintiff agreed to any such arbitration provision. Plaintiff also objects to any attempt to remove the proceeding from the Federal Northern District Court of New York as it result in further harm financially, emotionally, and an unconscionable transfer to the further detriment of the Plaintiff who has already suffered a significant financial loss in his relationship with the Defendants.

82. In the event that in this case the Defendants come up with some arbitration and dispute resolution to be conducted in California which the Plaintiff never agreed to nor seen nor reviewed, I request that this Court continue jurisdiction and dismiss any attempts in such case by the Defendants.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests judgment as follows:

1. Awarding Plaintiff compensatory damages in the sum of $240,000.00 jointly and severly;

2. An order from this Court rescinding any and all agreements between the parties and returning the Plaintiff to his original position held prior to any transactions with the Defendant;

3. Awarding Plaintiff prejudgment and post judgement interest;

4. Awarding Plaintiff reasonable attorney's fees, expert fees and other costs;

5. Awarding Plaintiff punitive damages in an amount to be proven but not less than 00000$1,000,000.00; and

6. Awarding such relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Date:  April 28, 2021

LAW OFFICES OF FINER and FANELLI

Stuart E. Finer, Esq. Attorneys for
Plaintiff Ray J. French
Office and P.O. Address:
510 Bleecker Street
Utica NY 13501
Tel: (315) 724-7800